IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANDRE D. ABRON, | ) | |
| | ) | |
| Plaintiff, | ) | No. 08 C 1955 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| SOO LINE RAILROAD COMPANY, d/b/a | ) | |
| CANADIAN PACIFIC RAILROAD, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Andre Abron has filed a five count amended complaint against his former

employer, Soo Line Railroad Co., d/b/a Canadian Pacific Railroad, alleging racial and disability

discrimination in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §

2000e, and Title I of the Americans with Disabilities Act, 42 U.S.C. § 12117. Defendant has

moved for summary judgment on all counts. Because the undisputed evidence demonstrates that

defendant's employment was terminated because he refused to come to work, defendant's

motion is granted.

**BACKGROUND**

Defendant hired plaintiff as a conductor in November 2004. As a conductor he was

responsible for supervising an ensuring the safe movement of the trains. In March 2006, plaintiff

was removed from service after testing positive for cocaine. Plaintiff elected to take a minimum

60 days suspension to participate in defendant's Employee Assistance Program ("EAP").

Plaintiff successfully completed the EAP and was approved to return to work on May 15, 2006.

Plaintiff returned to work as a conductor and his job duties did not change.

In May 2006 plaintiff complained to Blane Marien, then Manager of Operations at defendant's Bensenville Yard, that after plaintiff spoke on the radio used by employees, other unidentified employees made drug-related comments such as "crack" and "rocks for sale." It is undisputed that at least up to 50 persons had access to and could be using the radio at any time. Marien notified Terri Rovell, defendant's Employee Relations Advisor, and instructed a yard manager to listen to and transcribe the tape that recorded the transmission. The transcription indicated that someone did say "rocks for sale" after plaintiff spoke. The voice was disguised and Marien could not identify the speaker. He then interviewed six individuals who were working in the yard and known to have been on the same radio channel on the day in question. Only one of the six persons heard the comment, but that employee did not know who made the remark. All six employees were cautioned that such comments violated the company's harassment policy and any such comments should be reported immediately.

On May 26, 2006, plaintiff filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"), alleging that on May 12 and 23 he "became aware that [defendant] shared medical information relevant to my disability with co-workers." The EEOC issued a right to sue letter on June 7, 2006. Plaintiff never filed suit on this charge.

In June 2006 plaintiff began to take intermittent Family and Medical Leave Act ("FMLA") leave to care for a sick uncle. He exhausted his FMLA leave on November 15, 2006, although he claims to have requested additional leave as a result of his medical condition resulting from the harassment at work. Despite the lack of FMLA leave, plaintiff was absent eight days in the following three week period. Finally, on December 9, 2006, plaintiff informed

defendant that he would be off work until further notice and that he would provide a doctor's note to substantiate the need for leave.

Earlier, on November 20, 2006, in the middle of his intermittent FMLA leave, plaintiff had complained that while making a radio transmission he heard the word "drugs." Marien again directed someone to transcribe the radio transmission for the day in question. This time, however, the transcriber did not hear anyone mention the word "drugs" or make any other remark that might be directed toward plaintiff. Nonetheless, defendant put out a company wide "Notice from the Service Area Manager" or "SAM Notice" stating that management had become aware of incidents involving "disparaging remarks and mocking, taunting, directed at or about co-workers . . ., and that this type of behavior is not accepted and will not be tolerated . . .."

After plaintiff stopped coming to work on December 9, defendant sent him three notifications over a one month period indicating that plaintiff was required to submit documentation substantiating his absence from work. Plaintiff failed to submit anything from his doctor, and in fact failed to respond in any way to the notices. In response to the instant motion for summary judgment, plaintiff admits that he never provided the necessary documentation, but claims that due to scheduling problems his doctor was unable to do so for over a month. He has provided nothing from his doctor, however, to support this statement.

On January 24, 2007, defendant, in accordance with its Collective Bargaining Agreement ("CBA") with the United Transportation Union, gave plaintiff notice of a fact finding investigation and hearing set for January 31, 2007, in connection with plaintiff's failure to supply the required medical information. Under the CBA defendant was required to hold such a hearing prior to issuance of any discipline. Employees can be represented at the hearing by their union

representative and have the opportunity to present testimony, exhibits and witnesses, and to cross examine the company's witnesses. If a violation is found, the hearing officer recommends discipline in accordance with the Positive Behavior and Performance Development Policy. The employee has the opportunity to appeal any discipline.

Plaintiff did not appear at the hearing and failed to contact anyone to indicate that he would not be there. Plaintiff's union representative testified at the hearing that plaintiff did not inform him that plaintiff would not be at the hearing. At a break in the hearing, plaintiff's union representative called plaintiff, who informed the representative that he could not attend because his wife was sick. In his deposition in the instant case plaintiff claims that his union representative lied and that plaintiff had called the representative to request a continuance prior to the start of the investigation.

As a result of the hearing, plaintiff's employment was terminated. There is nothing in the record to indicate that he appealed that decision.

Plaintiff claims that on July 6, 2007, he interviewed with Diana Payton for a job with METRA (the Chicago Area Commuter Rail Line), and Payton told him that as long as defendant is even listed on his resume he will have a problem getting a railroad job or any other job. Plaintiff also claims that Payton told him that she knew he had a legal problem while employed by defendant, and that she could find out about his employment at defendant because one of METRA's human resources associates had worked for defendant. It is undisputed that plaintiff told Payton that he had left defendant in good standing.

## DISCUSSION

Defendant has moved for summary judgment on all counts. A movant is entitled to summary judgment under Rule 56 when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Unterreiner v. Volkswagen of America, Inc., 8 F.3d 1206, 1209 (7th Cir. 1993). Once a moving party has met its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. FED. R. CIV. P. 56(e); Becker v. Tenenbaum-Hill Assoc., Inc., 914 F.2d 107, 110 (7th Cir. 1990). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. Fisher v. Transco Services-Milwaukee, Inc., 979 F.2d 1239, 1242 (7th Cir. 1992).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Stewart v. McGinnis, 5 F.3d 1031, 1033 (7th Cir. 1993). This standard is applied with added rigor in employment discrimination cases, where issues of intent and credibility often dominate. Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1038 (7th Cir. 1993) (citations omitted). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252.

**Count I - ADA Claims**

In Count I plaintiff purports to assert both a "failure to accommodate" claim and a disparate treatment claim. The complaint fails to identify plaintiff's disability, but for the purposes of the instant motion the court assumes the alleged disability is drug addiction.[1]

To establish a claim for failure to accommodate, plaintiff must demonstrate that: (1) he is a qualified individual with a disability; (2) his employer was aware of his disability; and (3) the employer failed to reasonably accommodate the disability. EEOC v. Sears, Roebuck & Co., 417 F.3d 789, 797 (7th Cir. 2005). Assuming that drug addiction qualifies as a disability, plaintiff's evidence fails on all three requirements. First, there is no evidence in the record that plaintiff is "addicted" to drugs. The only evidence is that plaintiff once tested positive for cocaine and then successfully completed an EAP. That is not evidence of addiction, but of past use.

Second, even if the court assumes plaintiff is addicted to drugs, there is no evidence in the record that defendant was aware of that addiction. Again, all the evidence shows is that defendant was aware that plaintiff once failed a test and then completed the EAP. He did not test positive again. He presented no medical evidence of any addiction.

Nor was defendant aware that plaintiff required any accommodation as a result of any addiction. Plaintiff does not, for example, claim that at times he was unable to come to work because he was suffering from withdrawal systems. Indeed, plaintiff does not claim that he

---

[1]The ADA excludes from the definition of "qualified individual with a disability" any person currently using illegal drugs. 42 U.S.C. § 12114(a). The exclusion does not apply to persons who no longer engage in the use of illegal drugs, or who have sought and completed treatment. 42 U.S.C. § 12114(b). Whether drug addiction constitutes a "disability" under the ADA is an open question. See Pernice v. City of Chicago, 237 F.3d 783, 786 n.1 (7th Cir. 2001). Defendant has not challenged whether drug addition qualifies as a disability.

needed an accommodation to help with the effects of his alleged addiction. He does claim to

have told defendant that he needed additional FMLA leave to deal with the effects of co-

worker's comments about his use of drugs, and argues that the accommodation he sought was

the stopping of the harassment. This is not, however, a request for accommodation, but a request

under the ADA that defendant prevent co-employees' discrimination against plaintiff based on a

disability. It is, in essence, a claim that defendant has failed to prevent disparate treatment, not a

claim for failure to make a reasonable accommodation for a disability . Accordingly,

defendant's motion for summary judgment on plaintiff's failure to accommodate claim is

granted.

Indeed, in his brief plaintiff describes Count I as alleging "that Defendant discriminated

against Plaintiff by being subjected to an abusive and hostile environment related to his

disability [in] violation of Title I of the [ADA]." Thus, it appears that plaintiff is attempting to

allege a claim for hostile work environment.        To prevail on a hostile work environment

claim under the ADA[2] plaintiff must show that his work environment was both subjectively and

objectively hostile. Silk v. City of Chicago, 194 F.3d 788, 804 (7th Cir. 1999). Employers are

held vicariously liable for hostile environment harassment by supervisors, but plaintiff must

show negligence in order to hold his employer liable for co-worker harassment. Id.

An objectively hostile environment is one that a reasonable person would find hostile or

abusive. Id. To determine whether plaintiff has met this standard the court considers all the

circumstances, including: the frequency of the discriminatory conduct; its severity; whether the

---

[2]The Seventh Circuit has assumed, but never has explicitly held, that such a claim is
available. See Murphy v. Village of Hoffman Estates, 234 F.3d 1273 (7th Cir. 2007).

conduct was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. Id. The law "does not prohibit all verbal or physical harassment in the work place." Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 80 (1998). To be actionable the harassment must be so severe or pervasive as to alter the conditions of plaintiff's employment and create an abusive working environment. Silk, 194 F.3d at 804.

Therefore, to survive summary judgment plaintiff must present evidence sufficient for a rational trier of fact to find that his work place was permeated with discriminatory conduct – intimidation, ridicule, or insult, - that was sufficiently severe or pervasive to alter the conditions of his employment. To establish such severity or pervasiveness he must present evidence to support his allegations of frequency, severity and the threatening or humiliating nature of the discriminatory conduct and whether it unreasonably interfered with his work performance. To establish an alteration in the terms or conditions of his employment or an "adverse employment action," plaintiff must demonstrate either a tangible employment action such as a discharge or demotion, or a non-tangible action such as discriminatory conduct so severe as to create an objectively and subjectively hostile working environment. Id. at 804-805.

In the instant case plaintiff does not allege that he was harassed by any of his supervisors, thus requiring him to show that defendant was negligent. Id. at 804. He testified that he heard comments about drugs over the radio at least 50 times but has no other evidence to support that testimony. He has offered no tape recordings, nor any testimony from any co-workers to support his own statements. It is undisputed, however, that he complained only twice, and each time defendant investigated and took action. The first complaint was substantiated and defendant

admonished those co-workers known to have been using the radio. The second complaint was unsubstantiated, but defendant nevertheless took action by issuing the SAM Notice. Thus, plaintiff has offered no evidence that defendant was in any way negligent.

Moreover, plaintiff has failed to establish that the alleged conduct was so severe and pervasive that it altered the conditions of his employment. The only repeated conduct that plaintiff has alleged is some harmless comments that he heard over the radio, made by unidentified co-workers. He describes no face-to-face comments, no physical altercations, no physical threats and no particularly humiliating language. The conduct complained of is simply insufficient to create an objectively hostile or abusive working environment.

Additionally, plaintiff has no evidence to support his claim that his working environment was subjectively hostile. He claims to have told defendant that he was too stressed to work as a result of the abuse, but failed or refused to provide the necessary medical support. The only tangible employment action that he can possibly allege is defendant's failure to give him additional medical leave, and his ultimate termination. Each of those is the direct result, however, of his failure to provide any medical support for his claims, a failure that has continued to date. There is simply no medical evidence in the record to support his claim that his working environment was so abusive and hostile that he was too stressed to go to work. Accordingly, defendant's motion for summary judgment on plaintiff's claim of disability discrimination is granted.

**Counts II through IV**

Plaintiff's remaining discrimination claims, which appear to assert racially disparate treatment and retaliation based on his EEOC filings, fair no better. Counts II and III appear to

9

allege a racially hostile work environment, but he has even less evidence to support this claim than he does for his ADA claim. He has testified about hearing only two racially based comments, neither of which alone or in tandem would objectively justify his failure to come to work.

All of plaintiff's disability and race based claims are premised on his argument that he should have been given extra time off, or extra FMLA leave because of the effect that working in a hostile environment had on his mental state. He asserts in each count that he was on a "one year quest" to stop the harassment. Yet he refused to comply with the most basic requests to substantiate the need for additional time off. He continually refused to produce medical information. He did not just fail to produce the information, he ignored the many notices he received from defendant telling him that he needed to respond. He argues in his brief that his doctor was unable to get to his request, but he never once told that to defendant. Then, after failing to respond to requests for the medical information, he failed to appear at the hearing required by the collective bargaining agreement. He has not provided a declaration from his doctor that the doctor was unable to timely provide the medical report, and to this date has not provided any such report indicating any health related problems. The evidence very clearly demonstrates that plaintiff simply chose to refuse to come to work and now wants to be relieved of the effects of that decision. There is no evidence in the record to support his claims of discrimination or retaliation. Accordingly, defendant's motion for summary judgment on Counts II through IV is granted.

**Count V**

Finally, in Count V plaintiff claims that defendant retaliated against him by providing false, improper or incomplete information to potential employers. Plaintiff alleges that he applied for a position with METRA and interviewed with Diana Payton on July 6, 2007. He claims that after the interview Payton told him that one of METRA's HR associates had worked at defendant and could find out about plaintiff's employment at defendant. In a second interview with Payton that same day she allegedly told him that he had not been truthful about leaving defendant and that he had been engaged in some protected activity at defendant. Plaintiff admits that he told Payton that he left defendant in good standing.

Defendant has submitted an affidavit from Terri Rovell indicating that defendant does not release any information about a former employee without a written authorization signed by the employee. Once such authorization is received, defendant will release the dates of employment, job title, location and salary only. It is uncontested that defendant did not receive written authorization form from plaintiff and was not contacted by any potential employer requesting such information about plaintiff.

In the face of such evidence, plaintiff cannot stand pat on his allegations. He has provided nothing besides his own description of Payton's comments. He did not depose Payton, did not present Payton's declaration, and did not present any other evidence to support his claim. Accordingly, defendant's motion for summary judgment on Count V is granted.

## CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment is granted.

**ENTER:     August 18, 2009**

Robert W. Gettleman

_____

**Robert W. Gettleman**
**United States District Judge**